**United States District Court**
For the Northern District of California

**\*\*E-filed 9/21/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHARLES GILLIS, et al.,

               Plaintiffs,

   v.

CITY AND COUNTY OF SAN FRANCISCO, et al.

               Defendants.

_____/

No. C 08-3871 RS

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

     Plaintiffs Charles Gillis, Joseph Hall, and Anthony Lawrence were detained and transported to the police station during the course of a robbery investigation by the San Francisco Police Department. Lawrence was released at the station; Gillis and Hall were arrested and spent three days in jail before the charges against them were eventually dropped. Plaintiffs contend that their detention and arrest was based primarily on their race, rather than on reasonable suspicion or probable cause. Because the undisputed facts establish no unlawful conduct by the police, defendants' motion for summary judgment will be granted.

**United States District Court**
For the Northern District of California

## II.  BACKGROUND[1]

On the evening of July 27, 2007, Alex X. and his girlfriend, Kristen Y. were walking home from the Balboa BART station. At approximately 10:15 p.m. they were robbed at gunpoint by three black males wearing dark clothing and hooded sweatshirts.  Alex X. and Kristen Y. last saw the three men running northbound on San Jose Avenue, back towards the BART station.

Based on 911 calls from Alex X. and from a witness, San Francisco's Department of Emergency Management dispatch notified patrol units of the robbery, advising that the perpetrators were three black males and that one of them had a silver gun.  Dispatch also informed responding units that the assailants were last seen running north on San Jose Avenue towards Geneva Ave and the Balboa BART station.  Because this area is located near the patrol border between the Taraval and Sunnyside police stations, units from both joined in the search, and officers from Taraval station went to meet with Alex X. and Kristen Y.

At 10: 23 p.m., six minutes after the report of the robbery, Officers Francisco Ho and Eric O'Neal spotted three black males inside a parked vehicle on a one-way alleyway immediately adjacent to San Jose Avenue, two blocks north of where Alex X. and Kristen Y. were mugged. As the patrol car pulled up close to the vehicle, Officers Ho and O'Neal saw a fourth black male standing immediately next to it on the sidewalk.  When this fourth person saw the patrol car approach, he fled.  Although he was later detained and brought to the scene, he was released and never transported to the police station.  He is not a plaintiff in this action.

Officers Ho and O'Neal drew their guns as they approached the vehicle and ordered the occupants out of the vehicle one at a time.   All three were ordered to lie down for handcuffing and all three complied.  After the men were taken out of the vehicle, the officers frisk-searched them.

---

[1] Plaintiffs have not challenged any of the facts set out by defendants or objected to any of the supporting evidence.  Plaintiffs own factual assertions are largely unaccompanied by any citations to evidence.  Where citations are provided, the evidence often does not appear in the record at all, or it does not support the assertions made.  More fundamentally, the thrust of plaintiffs' opposition is not that there are material factual disputes, but their contention that the facts on which defendants' motion is based would be sufficient to permit a conclusion that plaintiffs were unlawfully detained and/or arrested.

They placed the three suspects in separate patrol cars to wait while other SFPD units brought Alex X. and Kristen Y. to the location to see if they could identify their assailants.

Officers from the Taraval arrived at the scene with Alex X. and Kristen Y. a short while later and took over the investigation. Before they were shown any of the suspects, Alex X. and Kristen Y. were separated and were each shown the SFPD's standard "Cold Show Admonition and Report" form. The form states:

*The person(s) you will see may or may not be the perpetrator(s) of the crime being investigated by the police.

*You should not assume that the person(s) you will look at committed the crime.

*You are under no obligation to identify anyone….

Alex X. identified Hall as the gunman who had robbed them, and indicated that he thought he also recognized Gillis as another of the perpetrators. Alex X. did not recognize, and could not identify, Lawrence. Kristen Y. also separately identified Gillis and Hall as being two of the three perpetrators. Kristen Y. did not recognize and could not identify Lawrence, or the fourth individual who had fled on foot.

Gillis, Hall, and Lawrence were then taken to Taraval Station. The fourth suspect was released at the scene. Neither the victims' property nor any gun was discovered in plaintiffs' possession or inside their vehicle. Gillis had roughly $2,000 in his possession, which he stated he had won at a casino. Defendants do not suggest the money or any portion of it was taken from Alex X. or Kristen Y.

At the police station, Alex X. and Kristen Y. were each separately shown photographs of the three plaintiffs. Their identifications were consistent with those they had made at the cold show. Gillis and Hall were then arrested and charged with the robbery, and each spent three days in jail. The charges against them were eventually dropped. Lawrence was never charged, and was released that night.

United States District Court
For the Northern District of California

3

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial.  *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986).  It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).  "[S]ummary judgment will not lie if

the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

# IV. DISCUSSION

Under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny, the Fourth Amendment allows police officers to conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions. "The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002). (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).  The existence of reasonable suspicion depends on "all the circumstances surrounding the encounter." *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)).

Here, there is no dispute that when Officers Ho and O'Neal encountered plaintiffs, they were aware of all of the following:

- A mugging had been reported a short time earlier, two blocks south.

- The suspects had last been seen running north.

- The suspects were three black males, dressed in dark clothing and hooded sweatshirts.

- Plaintiffs' vehicle was parked off the main roadway used by through traffic, on a narrow, concealed alley.

Plaintiffs argue that the descriptive information in the officers' possession was too generic to warrant an investigatory detention, particularly because they were not focusing on any particular age range, physical size, or other more specifically identifying characteristics.  Plaintiffs suggest that they were targeted primarily because of their race, and a general appearance shared by many of their peers.  There is no indication, however, that the officers were simply stopping and investigating all young black men in the general area.  Rather, the officers' attention was drawn to plaintiffs by all of the circumstances, including the fact that they were in a group of three, and were parked in an alley

**United States District Court**
For the Northern District of California

1  concealed from the main roadway, late at night, in the specific area towards which the assailants had

2  fled.  While Plaintiffs imply that their detention was motivated by race, they do not go so far as to

3  argue that it is impermissible for the police to ask witnesses the race of the perpetrators, and then to

4  rely on that information when searching for possible suspects.

5      Plaintiffs also criticize the officers for suspecting them in that they were found sitting in a

6  car, rather than on foot.  Criminals suspects fleeing a crime scene cannot insulate themselves from

7  reasonable suspicion, however, simply by getting into a parked vehicle.  Similarly, plaintiffs'

8  suggestion that proximity to the site of the criminal conduct should be disregarded for reasonable

9  suspicion purposes because perpetrators with access to a car likely would have fled is untenable.

10  Again, plaintiffs are suggesting a rule that is neither realistic nor workable because, in their view,

11  anyone close to the crime scene would be above suspicion.  Accordingly, the undisputed facts

12  establish that the officers had a reasonable suspicion that justified detaining plaintiffs for further

13  investigation.

14      Plaintiffs make no claim that they were subjected to excessive physical force or that they

15  were physically harmed in any way during their detention or at any time thereafter.  They do

16  contend, however, that it was unnecessary and unreasonable for the officers to approach them at

17  gunpoint and to order them to exit the car individually, walk backwards, and then lie on the ground.

18  Given that the officers had received a report of armed assailants, and the circumstances and location

19  in which the detention was made, the manner in which plaintiffs were detained served legitimate

20  safety issues, and was not unreasonable.

21      The subsequent transport of plaintiffs to the police station followed only after the two crime

22  victims separately identified Gillis and Hall as being two of their assailants.  Plaintiffs attempt to

23  argue that those identifications were not entirely reliable, but they have pointed to nothing that

24  would preclude the identifications from serving as at least probable cause for arrest, under the

25  totality the circumstances.  Probable cause exists if "at the moment the arrest was made . . . the facts

26  and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy

27  information were sufficient to warrant a prudent man in believing" that the person arrested

28  committed a crime.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quotations omitted).

United States District Court
For the Northern District of California

1      Assuming that transporting Lawrence to the police station transformed his detention into an

2   arrest, the fact that he had not been identified as one of the assailants does present a somewhat

3   closer call than in the case of Gillis and Hall.  Nevertheless, his presence in the vehicle with the

4   others so shortly after the crime occurred, under all the circumstances, was sufficient to support a

5   reasonable belief that he had committed a crime, either in conspiracy with the others, or as the third

6   assailant, even if not so identified by the victims.  Furthermore, at a minimum, defendants would be

7   entitled to qualified immunity to the extent Lawrence can be deemed to have been arrested, because

8   the officers reasonably could have believed probable cause existed, even if they were mistaken.  *See*

9   *Hunter*, 502 U.S. at 229 ("The qualified immunity standard gives ample room for mistaken

10  judgments by protecting all but the plainly incompetent or those who knowingly violate the law.")

11  (quotations omitted).

12      Absent an unlawful detention or arrest, plaintiffs' claims under state law largely fail on state

13  law immunity grounds, *see* Cal. Penal Code § 847(b)(1), Cal. Govt. Code §§ 820.2, 821.6, 815.2(b),

14  and they have not otherwise articulated any factual or legal basis for those claims to survive.

15  Accordingly, the motion for summary judgment must be granted.[2]

---

25  [2]  Even if summary judgment as to the entire action were not otherwise warranted, plaintiffs have

26  failed to point to any evidence to create a triable issue of fact as to the liability of the City and
County of San Francisco under *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978), or as to any

27  basis for claims against individual defendants Fong, Thomas, Contreras, F. Wong, Wilson, and
Frazier.  Summary judgment in favor of those defendants is therefore granted on this separate and

28  independent ground as well.

V.  CONCLUSION

Defendants' motion for summary judgment is granted.  A separate judgment will issue.

IT IS SO ORDERED.


Dated:  9/21/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28